Yes, Your Honor. Thank you. May it please the Court, Joshua Lifshitz of Lifshitz & Miller, on behalf of Appellant Jeremy Sawyer, I request to reserve three minutes for rebuttal. The lower court failed shareholders not once, but twice. In August 2016, when it didn't question the dismissal notice or require notice then, and then a second time in August 2018, when it denied Appellant's motion to intervene and grant dismissal without notice. Based upon the totality of the circumstances, Appellant was timely in filing his motion to intervene. The lower court erred, denying intervention due to Appellant's failure to explain a delay. Appellant was prejudiced by Appellee's failure to comply with Rule 23.1c, the statutorily requirements of Rule 23.1c. Appellee Stadnicki didn't even file papers to oppose our appeal. To create such a personalized requirement for Appellant to explain delay is to confuse a derivative action representative plaintiff, the real party in interest, with an individual plaintiff wishing to proceed with a personal claim. Whether or not one of the thousands of shareholders of Lending Club, besides Appellant, would have responded to notice that a derivative action was being dismissed without any settlement, we will never know. Appellees participated and benefited from a violation of 23.1c, the court approval and mandatory notice rule, and have shifted the focus to what Appellant could have, should have, or did know. But didn't Judge Alsop agree with you that 23.1c was not complied with and then allowed the motion to intervene? The court did not allow Appellant to intervene. No, I mean, allow the motion to intervene. The mere vacature of the action. That's what he allowed for. He did not require He needed to do that in order to entertain your motion to intervene. Yes, Your Honor. And he did that. Yes. And he heard your motion to intervene, and he said it was untimely. Yes, Your Honor. Why did he abuse his discretion in saying it was untimely? Do you claim that you had intervention as of right? We had intervention as of right and permissive intervention, simply because there is a presumed reliance on the initial filed complaint. We see that from when we look at Cannon and Bushansky, which relies on the case Diaz, which is a Ninth Circuit decision. We see that there is a presumed reliance that when a complaint is filed in a class action, and Cannon and Bushansky rely on that for those purposes for a derivative action, that notice is required under those circumstances in order to dismiss the action, prior to dismissal. So when the, when appellant was late in filing his motion to intervene, it's only as a result of the lack of notice that was out there that should have been there pursuant to 23.1c. The lawyer didn't have any notice at all? No. Two lines in the 88-page Form 10-Q, which don't provide the nature of the claim, it doesn't provide the statute of limitations, and it doesn't provide for the allowance of the motion to intervene, is that... You had no idea about all this other litigation that was going on? The appellant did not, correct, Your Honor? None. Correct, Your Honor. Zero. Is that a question or... Well, I'm just making an observation. That's all. Correct, Your Honor. There was a lot of litigation over the lending club. Yes, there was. Well, he was unaware of any dismissal. There's a presumed reliance that there is litigation, but it doesn't mean that he has, that he's aware that the case was dismissed. So we're dealing here with a layman, a shareholder who's a layman. We're not dealing with attorneys. We're dealing with someone who's unfamiliar with litigation. He had lawyers, though, right? Well, at a much later point in time, when he filed the complaint, that's when he had counsel. But up until that point, he didn't have counsel. And his complaint was filed beyond the statute of limitations? Yes, Your Honor. But for the fact that there is no notice of the dismissal. So when he filed, let me ask you this. When he filed his case, there was a motion to dismiss in that case, right? Yes, Your Honor. We're talking about his complaint? We're talking about his case, Mr. Sawyer's case. He files it, and there was a motion to dismiss, but it was never – as I understand it, I don't think Judge – did Judge Alsop actually rule on that motion to dismiss? Yes, he did, Your Honor. And he found it untimely? Yes, Your Honor. And he dismissed it? Beyond the statute of limitations. I thought – There were two – For some reason, I keep thinking in my head that you voluntarily dismissed that case, but I may be wrong. We voluntarily dismissed the appeal. Okay. I'm getting confused. Okay. All right. So – but when you filed the action, even though it was untimely, and it got related to Judge Alsop, you knew something was going on in his courtroom? Well, at this point, there was a lot of water under the bridge in the Sawyer action. Okay. We obtained initial discovery of, like, over a half a million pages of discovery. We entered into – we held a mediation. We actually – not only did we hold a mediation, we also coordinated with the Delaware Council to have that mediation in the Ninth Circuit – I'm sorry, in the Northern District. We also flew in – we also flew in Plaintiff Sawyer to participate in that mediation. He was the only plaintiff from all the plaintiffs from Delaware, from California. He was the only plaintiff that actually attended the mediation. So he was very involved. He participated. He did a lot of stuff. And it was six months later that, you know, there were complaints that he did not file his motion to intervene until later. But there was nothing that happened. Instead, Nikki, at that point in time, because only a complaint was filed, there was nothing that happened in Delaware. Defendants were seeking to stay those actions throughout the whole time period. From the initiation of their filings, defendants were seeking to stay those actions. There were no oral arguments in those actions. There was no motion to – there was a motion to dismiss or stay, but at each juncture in the Delaware cases, plaintiffs sought to amend their complaints. In fact, they even amended the complaints during this appeal process. So they weren't ahead, and the securities class action was about – was getting closer to winding down when Sawyer was pushing, and that's usually when derivative actions pick up. I mean, there's significant case law that states that. So when we look at the three elements of what's required when it comes time for intervention, the reason for the delay is like the weakest link. So once there's prejudice, which there is. There's prejudice here. We have a 14A claim. That is the only claim that does not require any proof of fraud, sounding in fraud, okay? And that is why it's – understandably, the Delaware case was dismissed because that one sounded in fraud, and it's a much higher, higher standard, and we recognize that. So there was prejudice when we did not – when we weren't permitted to bring our 14A claim. And why didn't we – why weren't? Because, again, there was no statutory notice as – someone was sleeping at the wheel or – that you effectively had constructive notice from the – what was it? They're statute for a reason, because that's inadequate for the layman. There's a reason why 23.1c says specifically we need court approval for the dismissal and the court should order notice as it deems required. There are three times – there are three times – Does the court have some discretion on the kinds of notice that would – There is – yes, and that's exactly what I'm going to get to. Bouchanski and Cannon state specifically, okay, notice requirements under 23.1c are excused only under one of three limited circumstances. One, if the claim is dismissed on the merits after litigation. Two, if the claim is deemed moot. And three, if absent shareholders will not be prejudiced. How could the court determine whether or not the 14a claim is speculative if there was never any briefing on it? That's not – that's not for a motion – that's not for a determination on a motion to intervene. Also, there are cases – and that's exactly why we also say, the courts say, that unless there is no prejudice, that is the only time, no prejudice, that is the only time where we will not consider the motion to intervene. Here there's – even Judge Alsop realized or stated in the opinion, there's slight, if at all, prejudice towards plaintiffs. Once you mention that word slight, there's prejudice. And there's no reason why we shouldn't be able to continue or pursue that 14a claim and being allowed to intervene into the action. There were screw-ups here, Your Honors. There were screw-ups, okay? Mr. Sawyer shouldn't be – Mr. Sawyer and the shareholders shouldn't be the ones to pay for those screw-ups that were done by the prior parties. With respect to – with respect to the proceedings, you know, to date, there was no advancement of proceedings. There was no – there was no – the cases were not in any further stance in the stage of proceedings that should have weighed in on here to prevent Mr. Sawyer from intervening. Prejudice – what was the legal prejudice? When we say prejudice, it means prejudice as a result of the delay. There was no prejudice here as a result of the delay. Nothing was found here that allowed for prejudice as a result of the delay. So the delay, the excuse or the reason for the delay, that's like the lowest, lowest thing on the tatem pole here. That's not – that shouldn't be – that shouldn't be counted in. That's what the cases say. Numerous cases say that. Even U.S. v. Oregon, 9th Circuit, 1984. It says the question of timeliness here thus turns upon the issue of prejudice to the existing parties. That's it. That's what we should be considering. That's what we should be looking at. Well, fair enough. But let me ask you another question. I'm still back at the beginning. When did Sawyer know that he had a statute of limitations problem? Only later on, after the statute is fired. Once he communicated with counsel. So when you filed the lawsuit, you knew that there was a statute of limitations problem? It was an issue. Yes, Your Honor. And you were just hoping it would go away? Hoping it would get resolved. We entered into mediation. We thought maybe we could figure it out. We could work it out with defendants. And that's why we pushed on and we did our work and we were continuing. So I just want to make – your position is you had – when you filed Sawyer's case, you didn't know about this case? I didn't say that. Well, that's my question. To intervene into a dead case, we didn't know how that would play out. It was just a judgment call, Your Honor. So you knew about this case? Yes. Okay. You want to save some time for your Bible? Yes, I do, Your Honor. Okay. Thank you. Good morning, Your Honors, or almost good afternoon. Adam Parris of Sullivan and Grummel on behalf of the appellees. This is all very confusing and confused, so I'm going to try to straighten out some of this. So when Mr. Sawyer filed his case, he filed it in – he retained counsel in October of 2017. He filed a complaint in November of 2017. Okay? The events at issue, right, of which he complains, were disclosed in corporate filings by Lending Club in May of 2016. So by the time he had even retained counsel and filed the complaint, his Section 14a claim, which he says he's the adequate representative to litigate, had already lapsed. It had lapsed by, you know, more than four months at that point. It wasn't like he missed the statute by a day or two. He blew it by about four months. Okay? So that's sort of point one. So he shows up, files this complaint, litigates with defendants on that motion, says it's not untimely. I mean, part of what was resolved together with the denial of the motion to intervene in Statnicki, right, which is this case, which he attempted to resuscitate when he realized he had a statute problem in Sawyer, he also litigated the statute issue in Sawyer, and those were resolved by Judge Alsop on the same day. They didn't appeal the denial or the dismissal for statute grounds because it's frankly so plain, right, as to almost defy belief that we had to litigate it. But he did. And so he knew right away that he had a statute issue, right? We litigated it. At some point later, almost seven months, about six and a half months after filing the Sawyer action, that's when he got the idea to move to intervene in Statnicki. His issue there, of course, was Statnicki was a dead action, right? You know, Statnicki himself had voluntarily dismissed his own case in August of 2016, right? So it was gone for almost two years by the point in time that he even filed this motion to intervene. And Judge Alsop resolved all of this all on the same day at the end of August of 2018. I know these are a lot of dates. But the punchline, if you will, is that Mr. Sawyer has gotten more than ample due process here, right? I mean, he was allowed to, right, Judge Alsop resuscitated, revived the Statnicki action specifically, as both Judge Bea and Judge Pius said at the beginning, specifically to allow him to entertain this idea of, well, if your action is time barred, which it looks like it is, maybe there's some basis upon which you can intervene either as of right or by permission in Statnicki, notwithstanding the fact that Statnicki had long since been dismissed in August of 2016, right? And so then when we turn to the issue that's actually before Your Honors today, it is this issue of whether or not under Rule 24 he was entitled either as a matter of right or as a matter of permission to intervene. And the short answer there is Judge Alsop found appropriately that he failed to move to intervene in a timely fashion. Now, again, whether you measure the timeliness as against the day that Mr. Sawyer woke up and retained counsel in October of 2017, right, or what Appellee's position is, which is, of course, he should have, you know, been aware of his rights, you know, at the time, you know, back in 2016, right, when the statements were made. That's really what's required. That's when you're on notice of either knowing or sort of having reason to know that you have a cause of action here, right, no matter what. That should have prompted him to file his own lawsuit at that time. That doesn't necessarily mean that he would have known about Stednicki at the time. That's exactly right, Your Honor, and we don't charge him with that knowledge. I mean, I agree with Appellant's counsel on that specific point. However, I mean, look, had he done so, right, had he realized I'm going to prosecute my rights back then as he was obliged to, that's, of course, when he would have been folded into all the litigation that Judge Alsop referenced as having left the station and that counsel referenced before. But even if you take it as of October 2017 or November of 2017, I mean, the record is clear, right? Appellant's counsel was aware of the fact that the Stednicki action had been filed. They were aware that it had been dismissed, and this appears in multiple declarations that the district court solicited from counsel, right? I mean, and they appear in the record at Excerpts 68 to 69, 72 to 73, 109 to 110. I mean, they ran docket searches, which indicated that the case had been dismissed in August of 2016, so it would have popped up there. Mr. Miller, co-counsel in the case, indicated that he was personally aware as of July of 2017, right? So it's completely inexplicable, and I think Judge Alsop called it utterly unexplained. That was at ER at 6, I think, right, as to why it is that Mr. Sawyer, right, waited for as long as he did to attempt to intervene in the Stednicki action. And I think that's the real question. On the date of attempted intervention in Stednicki? The attempted intervention in Stednicki didn't come until May 18th of 2018, right? So he retained counsel in October of 2017, filed the lawsuit. Statements were made in 2016. Statements were made in 2016, right? You're going way back there. Right, exactly. That was a year and a half before, right? Showed up in November of 2017 with his own complaint. Didn't seek to intervene in Stednicki until mid-May of 2018. So you're talking all in. What notice did he have that Stednicki was even a case in litigation? So the notice he would have had at the time he showed up in October, November of 2017 would have been twofold. First of all, his lawyers knew, okay, so they could have told him, right? And we have that from Mr. Miller's declarations that I just cited to you. Secondly, the company did provide notice. I mean, we did file it in a 10-Q in November of 2016. You know, there's a statement about, you know, sort of pending litigation. And the company indicated in the pending litigation section that the Stednicki action had been voluntarily dismissed months earlier. Right? And I do think, you know, it's perfectly fair to charge him with that as well. Again, the irony, of course, Your Being, Your Honors, this is a he wants to assert a Section 14a claim. That's based on statements in corporate filings. Right? So he's saying, hey, look, these statements in the May 2016 corporate filings were misleading. He doesn't want him also to be charged with the statements that came later in the November 2016 corporate filings. Right? So I think there's an inconsistency there as well. But sort of returning to the core issue, I mean, I don't think most of the sort of the complaints about the Rule 23.1C dismissal, I mean, it's a little bit of looking through the wrong end of the telescope. Right? So the time, you know, the amount of time that lapsed from when they learned and when they actually filed a motion to intervene, you know, it's really not excessive just looking at it by itself. But what I understood Judge Alsup to be saying is he looked at it in context. That is, the other actions, particularly the class action, which had already been approved and settled. And he approved it. And Judge Alsup can be colorful. And the one statement that caught my eye was when he said the train already left the station. And when you put it in that context, he seemed to be saying when you take all these circumstances together, he just waited too long. Is that right? I think that's exactly right, Your Honor. I mean, the LULAC v. Wilson case, which we cite to you, right, talks about when you're assessing timeliness, right, there are multiple factors. There's what's the stage of the proceedings, what's the prejudice to the parties, right? What's the length of and the reason for the delay? Those are the three factors that you look at under U.S. v. Oregon and U.S. v. Washington. This is all in the briefs, right? LULAC talks specifically to this point, and it commands, I mean, it requires the trial court to take a nuanced, pragmatic approach, right, to looking at the complexion of the litigation and making an assessment, right? And that's why, frankly, as three either current or former trial court judges, I mean, you understand these sorts of matters can be messy. Trial court judge, count me in. I think all three. I think I've got the perfect panel, right? I mean, these can be messy. There's a lot going on in the trial court, right? And that's why it's committed to the sound discretion of the trial court to sort all this out. And, look, I think Judge Alsop's statement was, albeit colorful, was exactly correct, right? From your chronologies, I've taken a note. Sawyer's lawyers knew about the Stadnicki case in October 2017, and he moved to intervene five months later. He moved to intervene. Seven months later. Yeah, about seven months later. That's right. Why is that so great an expanse of time? Well, first of all, seven months, a bunch of things happened in that period of time, right, including a bunch of activity in the class case, right, a bunch of activity in the Delaware, consolidated derivative litigation, so there was a mediation, as appellant's counsel noted, in the interim, right? So there was plenty of activity going on. And, look, that's the type of thing that the court is entitled to sort out, right? It's sort of two parts of that test, Judge Beyer, right? One is how long, and secondly is what's the reason, right? That's what U.S. v. Washington talks about, right? And in this case, again, you sort of can't escape the fact that notwithstanding putting in multiple declarations from counsel, a declaration from Sawyer himself, there was never any explanation as to why they waited for seven months, right? I mean, if you look at the case law, right, it's a little bit all over the place, right? Certainly if it's a couple of weeks or a couple of months, that would seem to tip the scales towards, you know, a finding of timeliness. If you go out months or years, as some of these cases are, that seems to be untimely. But the thing that connects all of them, I think, is what's the explanation, right? Each case is different. And here, notwithstanding having been given multiple opportunities, right, to explain why it was they waited to move, the district court never got an explanation for why he waited to move so long. Now, I think that's a critical piece of what informed his discretion here. It wasn't just that it was seven months. It was seven months coming after a year and a half, coming after the lack of any explanation whatsoever. And look, in coming at the fact that, you know, one of the other elements of this, of course, is sort of the adequacy of the representation of his interests, those were being litigated, right? Your opponent says what we have to look at is not whether an explanation was given, but whether there was some prejudice to Sawyer. Prejudice is one of the factors, right? And the district court made a finding on that. He said, in balance, it's neutral. So on the three timeliness factors, right, one being reason for and length of and reason for the delay, second one being prejudice, third one being stage of proceedings, he said the second was neutral. And, again, that's within his discretion to find here, right? We argued opposite, of course. We said we were prejudiced. He said it was slighted best. But where he came down and where he exercised his discretion and what moved the needle really for the district court here was, of course, the fact that it had taken so long, A, for him to wake up and even file, and, B, once he then did, to even attempt to intervene in Stadnicki, combined with the stage of the proceedings and everything that had happened and sort of the overall complexion of the Lending Club securities litigation, which was very, very involved. At the time Judge Alsop reopened Stadnicki, what was the status of the class action? The class action at that point had been settled. Settled? It had already been settled. He approved the settlement at that time? You know, that's a great question. Or did the settlement come before he filed his motion to intervene? The settlement certainly came before I think it was preliminarily approved. This is in the record. I just don't remember the precise dates. And the litigation in the Chancery Court in New Jersey, what was the stage there? In Delaware. Or Delaware, I'm sorry. That had been proceeding. I see I'm getting the yellow light, so I'll be brief. That had been proceeding also for years. They did multiple 20 demands there. They'd gotten a lot of discovery. They'd filed their consolidated amended complaint at that point, and by this time that had been filed and that was being briefed on a motion to dismiss. So we were pushing forward there as well. Your opposing counselor made a big point about his case had a 14B claim? A 14A, yes. A 14A claim, and the Chancery Court didn't. Is that right? That's correct. Well, that's really significant here because we know now, later, that the Chancery Court dismissed the cases there because they couldn't meet the high standard, I guess, of pleading. I don't know what goes on in the Chancery Court. Another experience I've never really had the opportunity to share. They got dismissed, and we now know that that had a very high element of fraud and couldn't do it, but this 14A claim. So my answer is, of course, it doesn't matter. One, a Section 14A claim, even were he allowed to pursue it, still requires under federal law, 23.1, he'd still have to make a demand. The reason the Delaware action ultimately failed was because the plaintiff there failed to make a demand on the board, and it failed for demand for utility. He'd suffer the same fate here. It's the same analysis, so I don't think it matters, first of all. Second of all, as a matter of law, under circuit law, under Geithner, which we cite to you, and again, under Lulak v. Wilson, under those cases, the counsel in both actions were pursuing the same objective, and the fact that they're pursuing the same objective, even if they employed different litigation strategies or legal tactics in terms of the claims they file, that does not mean that the representation in Delaware was inadequate. Judge Alsop specifically solicited input. This is, I think, at ER at either 70 or 75, I think 70. He asked the Delaware lawyers to weigh in and say why they didn't file a Section 14A claim. They said after investigation, they chose not to pursue one. So the fact is there was, under the other prong of Rule 24 intervention, there was adequate representation of these interests in Delaware at the time that Mr. Sawyer moved to intervene, and therefore Judge Alsop was correct in exercising his discretion. It certainly wasn't abusive discretion to say that under Rule 24 he would deny the motion. Thank you, Your Honor. Thank you. I'll try to be quick, Your Honor. Firstly, the Delaware plaintiffs in their letter, which Judge Alsop referred to, it says, after receiving and evaluating books and records from Lending Club, they elected in consultation with their clients exclusively to pursue state law claims in the Delaware Court of Chancery. And from there, Judge Alsop determined or took it to this level that the Delaware plaintiffs decided to forego the Section 14A claim is telling and further indicates that the strategic choices made in the Delaware action adequately represent Lending Club's interests. I don't know what's telling from those words. I don't know how anything could be gleaned from that, more than they chose to be in Delaware Chancery Court, nothing more, nothing less. In Citizens v. For Balanced Use v. Wilderness Association 647 F3D 893-898, 9th Circuit, 2011, it says specifically that adequacy of representation by courts in the 9th Circuit considered three factors, whether the interest of a present party is such that it will undoubtedly make all of proposed intervener's arguments, okay, whether the present party is capable and willing to make such arguments, and whether a proposed intervener would offer any necessary elements to the proceeding that other parties would neglect. Delaware wasn't doing that, okay. It's clear Delaware was not putting forth the 14A claim. So that's in contrast to the 9th Circuit. And Canon v. Clark, it says specifically that notice isn't good when all you put in is just a claim dismissed, that's it, and not giving any description. My time is up, Your Honor. Thank you, Counsel. We appreciate your arguments this morning. The matter is submitted at this time, and that ends our session for today. Thank you. Thank you.
judges: Paez, Bea, Jack